# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **LaTONYA SAYLES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 2879 |
| ) | |
| **DIRECTSAT USA, LLC,** a Delaware ) | Judge Rebecca R. Pallmeyer |
| limited liability corporation, and ) | |
| **UNITEK USA, LLC,** a Delaware limited ) | |
| liability corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

Plaintiff LaTonya Sayles ("Sayles") injured her hand on March 2, 2009, in an accident at work and was fired two weeks later, after she announced her intention to file a workers' compensation claim. In this lawsuit, Sayles charges her former employer, Defendant DirectSat USA, LLC ("DirectSat"), with discharging her in retaliation for exercising her rights under the Illinois Worker's Compensation Act.

DirectSat moves to dismiss the case pursuant to FED. R. CIV. P. 12(b)(3) or to transfer it to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). DirectSat contends dismissal or transfer is required by the terms of a November 14, 2008 letter (the "Offer Letter") that Sayles signed when she accepted her job. That letter includes the following language:

> In the event a dispute does arise, this letter, including any validity interpretation, construction and performance of this letter, shall be governed by and construed in accordance with the substantive laws of the State of Delaware. Jurisdiction for resolution of any disputes shall be solely in Pennsylvania.

Sayles opposes the motion. She contends the forum selection clause is unenforceable and that the Eastern District of Pennsylvania is not the most convenient forum. For the reasons set forth here, the motion is denied.

## DISCUSSION

**A.     Dismissal Pursuant to Rule 12(b)(3)**

The Supreme Court has held broadly that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S. Ct. 1907, 1913 (1972). A forum selection clause such as the one at issue here is, thus, presumptively valid, unless the party opposing its enforcement can show that the clause is unreasonable. *Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (quoting *M/S Bremen*, 407 U.S. at 10, 92 S. Ct. at 1913). Forum selection clauses are unreasonable if any one of the following conditions is met:

> (1) if their incorporation into the contract was the result of fraud, undue influence or overweening bargaining power[;] (2) if the selected forum is so "gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court[;]" or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*Id.* (internal citations omitted). Although the parties have made no mention of it, the court notes that Delaware law is similar; forum selection clauses in contracts "are enforceable under Delaware law unless enforcement would be 'unreasonable and unjust under the circumstances,' or if the forum selection clause was procured 'by fraudulent inducement.'" *Accelecare Would Centers, Inc. v. Bank of New* York, No. 08 Cir. 8351 (DLC), 2009 WL 2460987, *5 (S.D.N.Y. Aug. 11, 2009), quoting *Prestancia Management Group, Inc. v. Virginia Heritage Foundation, II LLC*, Civ. No. A. 1032-S (JWN), 2005 WL 1364616, at *7, *7 n.56 (Del. Ch. May 27, 2005).

DirectSat notes that Sayles expressly agreed to the forum selection provision and that "a person who signs a contract is presumed to know its terms and consents to be bound by them." *Bonny,* 3 F.3d at 160 n.10. As DirectSat observes, such clauses are routinely upheld. Notably, however, many of the cases cited by DirectSat involved sophisticated business parties who actually negotiated the provisions of the agreements that included the forum selection clause. *M/S Bremen*,

2

for example, involved two corporations who negotiated a an international agreement for which the forum selection clause was "a vital part." 407 U.S. at 13-14, 92 S. Ct. at 1915. The Court specifically observed that the choice of forum "was made in an arm's-length negotiation by experienced and sophisticated businessmen." *Id.* at 12, 92 S. Ct. at 1914.

DirectSat does cite one case in which a more sophisticated contracting party successfully enforced such a clause against an individual consumer. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587, 111 S. Ct. 1522, 1524 (1991). In enforcing the clause, the *Shute* Court observed that (1) as a cruise line, doing business with customers in a variety of locations, Carnival had a special interest in limiting the fora in which it could be sued; (2) the clause would dispel confusion about where suit could be brought; (3) by buying a ticket with a forum selection clause and limiting the fora in which the cruise line could be sued, the customer received a benefit by way of a reduced fare; and (4) there was no evidence that the plaintiffs were physically or financially unable to litigate in the agreed-upon forum. *Shute*, 499 U.S. at 593-94, 111 S. Ct. at 1527.

This case differs from those circumstances in important ways. First, the clause appears to be the product of "overweening" bargaining power. Sayles has submitted an affidavit in which she describes the circumstances in which she signed the Offer Letter: On December 21, 2008, a few months after she began work as a temporary employee for DirectSat, she was directed to go to the office of a manager, Evett Manley, who told her

> that I would now be a permanent employee of DirectSat USA, instead of temporary. He told me I would be paid $11.50 per hour, have one (1) week paid vacation per year, and be eligible for medical insurance after 90 days. Several other employees were in Evett Manley's office at the same time I was and were told the same things.

Sayles Aff., Exhibit B to Plaintiff's Response Memo [28-2] ¶ 4. Manley told Plaintiff that before returning to work, she needed to sign some paperwork, and then handed her the Offer Letter, which was dated November 14, 2008, but had the December 21 date handwritten on it. Plaintiff had no time to read the letter, assumed it addressed only her wages and benefits, and was not given a

3

copy. *Id.* ¶¶ 5, 6, 8. She reports that she was in Mr. Manley's office for no more than three minutes. *Id.* ¶ 7. As Plaintiff contends, these circumstances demonstrate that DirectSat maintained all of the bargaining power; Sayles's only options were to sign the Offer Letter or lose the chance to become a permanent employee. Defendant offers no rebuttal. The reply memorandum makes no mention of the circumstances surrounding the Offer Letter, and has not challenged a factual account that, as described by Plaintiff, reflects "overweening" bargaining power.

The court is concerned, further, that enforcement of the forum selection clause in this case would prove "gravely difficult and inconvenient" to Sayles, a single mother with limited finances, and could indeed effectively deprive her of the opportunity to pursue her claim. DirectSat is correct that a routine claim of general inconvenience or added expense is not sufficient to defeat an otherwise valid forum selection clause. *See Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 758 (7th Cir. 1992). In this case, however, enforcement of this clause would go beyond general inconvenience. The Seventh Circuit appears to recognize that "severe physical and financial hardship by being compelled to litigate [elsewhere]" may be enough to defeat enforcement of a forum selection clause. *See Bonny*, 3 F.3d at 160 (plaintiffs did not establish the clause was gravely inconvenient because they did not argue that they would suffer severe physical and financial hardship if clause was enforced); *see also Shute*, 499 U.S. at 594, 111 S. Ct. at 1528 (noting there was no evidence that plaintiffs were physically or financially unable to pursue litigation in Florida). In Sayles's financial and personal situation, it is likely that she would be gravely inconvenienced by transfer to the Eastern District of Pennsylvania.

In its leading case enforcing a forum section clause, the Supreme Court considered a hypothetical "agreement between two Americans to resolve their *essentially local disputes* in a remote alien forum," and observed that "the serious inconvenience of the contractual forum to one or both of the parties might carry greater weight in determining the reasonableness of the forum clause." *M/S Bremen*, 407 U.S. at 17, 92 S. Ct. at 1917 (emphasis added). This case appears to

4

fall into that category. All of the events occurred in the Northern District of Illinois and the key witnesses reside here.

Finally, the court considers the matter of public policy. DirectSat urges that this factor militates in favor of its position, because a ruling in its favor would clear up confusion about where suits arising from a contract must be litigated. (Defendant's Memorandum in Support of Motion to Dismiss [16] at 8.) Sayles notes, however, that Illinois has a public policy interest in enforcement of its workers' compensation laws and holding employers who retaliate against workers liable. (Plaintiff's Response Memorandum [28] at 6.) Although the cases she cites do not directly address the matter of forum selection, the court concludes that public policy does not clearly favor either party on this issue.

DirectSat's Rule 12(b)(3) motion to dismiss is denied.

**B.      Transfer Pursuant to 28 U.S.C. § 1404(a)**

According to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The determination of whether to grant or deny a motion to transfer is committed to the sound discretion of the trial court. *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). The trial court will adjudicate such motions based upon an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988). The party seeking the transfer "has the burden of showing that 'the transferee forum is clearly more convenient.'" *Heller Fin., Inc.*, 883 F.2d at 1293 (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).

DirectSat has not satisfied the court that litigation in the Eastern District of Pennsylvania is "clearly more convenient." The dispute concerning Plaintiff's discharge is, in fact, purely local in nature, and the relevant witnesses reside in the Northern District of Illinois. Sayles was employed in Bedford Park, Illinois, and the supervisors involved in the alleged events reside here as well.

DirectSat notes that its corporate headquarters are in the Eastern District of Pennsylvania, but has not established that this factor is significant. There is no indication, for example, that voluminous records would need to be transferred here, or that any significant witnesses will be required to travel from Pennsylvania to Illinois. Such a showing is required, as the Seventh Circuit noted in *Heller Financial*: "To support its contention, [a party moving for transfer is] obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included." *Heller Fin,* 883 F.2d at 1294. Indeed, in this case it appears that more witnesses would be required to travel were the court to transfer this case. And even if DirectSat could establish that transfer is more convenient for some of its witnesses, that convenience would be gained at the expense of Plaintiff's witnesses. *See id.* at 1293. DirectSat has failed to establish that the transferee forum is "clearly more convenient."

## CONCLUSION

Defendant's motion to dismiss or for transfer [15] is denied.

ENTER:

Dated: February 3, 2011   _____
　　　　　　　　　　　　　　REBECCA R. PALLMEYER
　　　　　　　　　　　　　　United States District Judge